Larry EDWARDS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A03–9605–PC–171.

Court of Appeals of Indiana.

March 4, 1997.

Rehearing Denied May 19, 1997.

Susan K. Carpenter, Public Defender of Indiana, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

STATON, Judge.

Larry Edwards appeals the denial of his petition for post-conviction relief. The sole issue on appeal is whether the post-conviction court erred by finding that Edwards' petition was barred by the doctrine of laches.[1]

1. Having found that Edwards' petition is barred by the doctrine of laches, the post-conviction court did not address the merits of Edwards' petition. Without findings and conclusions on the merits of Edwards' petition, we are unable to review an appeal on the merits. *See Johnson v. State,* 670 N.E.2d 59, 61 n. 1 (Ind.Ct.App.1996).

We reverse.

In June 1975, Edwards was convicted of two counts of inflicting injury in the perpetration of a robbery. The convictions were affirmed by the Indiana Supreme court on August 26, 1976. *Edwards v. State*, 265 Ind. 239, 352 N.E.2d 730 (1976). Later, on October 1, 1990, Edwards filed a *pro se* petition for post-conviction relief. The post-conviction court found that Edwards' petition was barred by the equitable doctrine of laches. Edwards appeals.

Under the rules of post-conviction relief, the petitioner bears the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5; *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993), *reh. denied.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court. *Id.*

■ If laches is to bar relief, the State must prove by a preponderance of the evidence that the petitioner was responsible for the unreasonable delay, and that the State has been prejudiced by the delay. *Perry v. State*, 512 N.E.2d 841, 843 (Ind.1987), *reh. denied.*

■ The facts of this case expose an unacceptable state of affairs. Edwards' direct appeals were exhausted on August 26, 1976 when the Indiana Supreme Court handed down its opinion in *Edwards v. State*, 265 Ind. 239, 352 N.E.2d 730 (1976). On September 9, 1976, Edwards wrote the State Public Defender's office requesting assistance.[2] On November 29, 1976, Edwards' first Public Defender responded that he was "extremely

busy" and hoped to begin personal interviews on new cases sometime in February of 1977.[3] On August 15, 1977, the first Public Defender wrote Edwards stating that his case had been re-assigned and that his new Public Defender should be in contact with him soon. The record does not disclose what action, if any, the second Public Defender took. It does appear from the record that Edwards' third Public Defender did conduct an interview with him on or around December 14, 1977. On December 23, 1977, the third Public Defender wrote Edwards and told him that his case would be investigated, including a review of the transcript. The next written correspondence in the record is a letter from Edwards to the Public Defender's Office on July 15, 1982 again requesting action be taken in his behalf. On July 26, 1982, Edwards' fourth Public Defender responded that Edwards would be placed on his interview list and that they would meet as soon as his schedule permitted.

In the interim, Edwards was attempting to obtain transcripts from the clerk of the trial court. Upon learning of Edwards' activity, the fourth Public Defender wrote Edwards with instructions on how to obtain the desired information: Edwards was to contact the Clerk of the Indiana Supreme Court; the requested information would then be sent to the Public Defender's office; in order to get the information from the Public Defender's office, Edwards would then have to sign and return a waiver of representation; the transcript would then be copied and delivered to him; after he received his transcript, he could then again request assistance from the Public Defender at which time Edwards would have to return his copy of the transcript.[4]

Accordingly, our review is limited to the issue of laches.

2. In this correspondence, Edwards stated that he wanted a new trial, but was not interested in post-conviction relief at that time. The State argues that this statement renders any delay attributable to Edwards. However, had Edwards received timely legal advice, his misunderstanding as to the procedural posture of any further appeals could have been quickly remedied. We conclude this statement simply reflects a lack of understanding of our judicial system by a layman rather than an informed, strategic decision to

delay seeking post-conviction relief at that time. No matter how construed, the salient point is that Edwards' correspondence was an unequivocal request for assistance.

3. There appears to have been no personal face-to-face interview at this time, but the Deputy did have a phone conversation with Edwards on March 23, 1977.

4. The beauty of this process was not lost on the Deputy Public Defender. "It is a marvelous system Mr. Edwards, once you learn how it works." Record at 161.

On July 22, 1982, Edwards wrote to clarify a misunderstanding: he was not seeking his records, but those of his co-defendant's post-conviction proceeding. According to Edwards' correspondence, his co-defendant successfully petitioned for post-conviction relief and had his sentence reduced from two life sentences to seventeen years. On August 4, 1982, the fourth Public Defender responded acknowledging the previous confusion and recognizing what Edwards was seeking. This correspondence is noteworthy for the following sentence: "If you want the assistance of our office please complete and return the enclosed Information Sheet." Record at 163. Edwards complied with the request and completed his second information sheet. Upon receipt of Edwards' second information sheet, the fourth Public Defender wrote stating that Edwards was on his interview list, that he would meet with him as soon as possible but that there was a large back-log of cases.

As a result of an internal reorganization, Edwards' fourth Public Defender wrote on May 27, 1983 that his case was being reassigned. The only correspondence from Edwards' fifth Public Defender is a letter on December 19, 1983 stating that, due to another reorganization, his case was being reassigned and that Edwards was not to correspond with the Public Defender's office until he heard from his sixth Public Defender.

On October 2, 1984, Edwards received a letter from his sixth Public Defender. In his letter, the sixth Public Defender expressed concern over the fact that there was no correspondence from Edwards since 1982. Edwards had been instructed previously by his fifth Public Defender not to contact the office of the Public Defender but to wait until he was contacted. The letter further stated: "[i]f you still want your trial record reviewed to determine whether you have grounds for post-conviction relief, please write and I will give your case priority consideration." Edwards promptly responded that he was still seeking the Public Defender's assistance.

Edwards' sixth Public Defender responded on November 20, 1984, a month and a half later, that he would review the transcript, but that he did not think he could get to his case until January or February of 1985—four months later.

No apparent action was taken by the sixth Public Defender. Edwards again wrote the Public Defender on July 18, 1987, pleading that his case be given attention. Edwards' letter was responded to by his seventh Public Defender on August 5, 1987. This Public Defender sent Edwards a form to sign so that the Public Defender could enter an appearance in his behalf. No further correspondence occurred between the two until March 1, 1988 when Edwards initiated contact to inquire into the status of his case. Notwithstanding his experiences to this date, Edwards diplomatically wrote that "I don't mean to appear too impatient." Record at 183. His seventh Public Defender responded, a month and a half later, on April 15, 1988 stating that Edwards' file had not been reviewed yet, but she was planning to see him in May.

■ Not having met with his seventh Public Defender in May, Edwards wrote on July 10, 1988 expressing his frustration at the missed interview. The Public Defender responded that he could expect her in November 1988. After this meeting, the Public Defender sent Edwards a copy of his co-defendant's petition for post-conviction relief. After receiving other documents from the Public Defender in February 1990, Edwards filed the instant *pro se* petition for post-conviction relief on October 1, 1990.[5]

Given Edwards' continuous and patient attempts at soliciting the aid of the public defender's office, we conclude that Edwards was diligent in attempting to obtain assistance in filing for post-conviction relief. A petitioner "can hardly be charged with any delay which occurred following his contacting of the Public Defender's Office. . . ." *Horton*

---

5. After this date, Edwards' case was given to another public defender. The delay from filing to an actual hearing was due to the fact that post-conviction cases are prioritized based on their filing dates. This time is not chargeable to

a defendant with respect to laches. *Douglas v. State*, 634 N.E.2d 811, 815–16 (Ind.Ct.App.1994), *trans. denied, modified on other grounds*, 640 N.E.2d 73 (Ind.Ct.App.1994).

*v. State,* 510 N.E.2d 648, 649 (Ind.1987). We agree with the court in *Douglas* where, discussing the delay between filing and the hearing, the court stated:

> We refuse to penalize [Petitioner] for the delays caused by the Public Defender's Office. One arm of the State (the Prosecutor) may not take advantage of a delay created by another arm of the State (the Public Defender) to the detriment of the defendant. While we recognize the burdensome caseload of the Public Defender's Office and the high turnover of attorneys resulting in delays, as between a defendant and the State, the defendant will not be penalized for the delays.

*Douglas v. State,* 634 N.E.2d 811, 816 (Ind. Ct.App.1994).

■■■■ To this end, we will not add to Edwards' plight in seeking post-conviction relief by applying the equitable doctrine of laches. While we recognize fourteen years is a lengthy period to seek relief, the mere passage of time alone is not enough to constitute laches. *Slone v. State,* 590 N.E.2d 635, 637 (Ind.Ct.App.1992). Where a defendant is diligent in maintaining contact with the Public Defender, continually expressing his desire for assistance, laches will not lie, especially when he is continuously promised assistance. *Gallagher v. State,* 274 Ind. 235, 410 N.E.2d 1290, 1292 (1980). A lengthy delay will not negate such a petitioner's diligence under these circumstances absent a showing of an abusive delay by the petitioner. *Id.* In Edwards' case, we glean no abusive delay on his behalf.

The State argues that laches should still apply since Edwards was well aware of the availability of post-conviction relief, and he could have filed his petition *pro se* at any time. Knowledge of post-conviction remedies is undisputed in this case, since Edwards previously filed a *pro se* petition on an unrelated conviction from 1966. The State's argument would have us conclude that the only way Edwards could have demonstrated due diligence was by filing *pro se.* Under the facts of this case, we cannot countenance such a conclusion. The result might have been different if Edwards had not promptly responded to communications from the Pub-

lic Defender's Office or if the Public Defender's Office informed Edwards that they would not represent him. *See Ware v. State,* 567 N.E.2d 803 (Ind.1991) (laches applied where Petitioner delayed filing after Public Defender stated Petitioner would not be represented since case had no merit); *Day v. State,* 483 N.E.2d 745 (Ind.1985) (laches applied where Petitioner did not respond to inquiries from Public Defender regarding whether Petitioner wanted assistance). However, Edwards repeatedly sought, and was promised assistance from the only available legal representation at his disposal: the Public Defender's Office.

Reversed.

RILEY, J., concurs.

HOFFMAN, J., concurs in result with separate opinion.

HOFFMAN, Judge, concurring in result.

I concur in the result and write only to punctuate the unique circumstances which prompt my concurrence. Edwards immediately contacted the State Public Defender's Office after his direct appeal, he remained in contact with the Public Defender's Office, he was never told that he would not be represented, and he was informed that he should not initiate further communications with the office. Further, of paramount importance is that the neglect was by an arm of the State. These factors combine to foreclose a finding that Edwards unreasonably delayed seeking relief causing the State prejudice.

However, circumstances of this caliber are a must to overcome the factors weighing in favor of a laches finding. Significantly, Edwards had previously filed a pro-se petition for post-conviction relief. The majority's acknowledgment of the previous petition appears incongruous with footnote 2 explaining Edwards' naivete. Nonetheless, the overwhelming evidence of Edwards' attempts to gain representation from a State agency require reversal.