John David SMITH, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 29A02–0010–PC–640.

Court of Appeals of Indiana.

April 30, 2001.

Transfer Granted July 19, 2001.

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant John David Smith ("Smith") appeals the post-conviction court's denial of his petition for relief. We reverse.

### Issues

Smith raises five issues for review, three of which we address as reordered and restated below:[1]

I. whether the post-conviction court erred in determining that Smith's claims were barred by laches; and

II. whether Smith should have been convicted and sentenced on six theft counts arising from a single act of larceny; and

III. whether Smith's offenses constituted a single episode of criminal conduct under Indiana Code Section 35–50–1–2(b).

### Facts and Procedural History

The facts most favorable to the convictions indicate that on October 18, 1996, while in the Hamilton County home of his then-grandparents-in-law, Horace ("Horace") and Virginia Harvey, Smith stole a book of checks from under Horace's bed. The checking account was held in trust for Horace's sister at NBD Bank ("NBD"), with Horace as trustee. Later that day, Smith deposited six of the checks totaling over $17,000 in his Bank One account at six Bank One branches in Marion County; all six checks were made payable to and endorsed by "Dave Smith" and were signed in Horace's name.

After an NBD representative contacted him about the checks drawn on his account, Horace determined that the checks had been stolen and called the Hamilton County Sheriff's Department. On January 7, 1997, the State charged Smith with one

---

1. Because we reverse Smith's convictions, we need not address Smith's claims that he was improperly threatened with prosecution for burglary and that he received ineffective assistance of counsel.

count of Class B felony burglary,[2] six counts of Class D felony theft,[3] and six counts of Class C felony forgery.[4] On January 22, 1997, Smith filed a pro se motion for a "fast and speedy" trial.

Represented by counsel R. Scott Sirk ("Sirk"), Smith signed a written agreement wherein he pleaded guilty to all theft and forgery charges in Hamilton Circuit Court on February 28, 1997; the State agreed to dismiss the burglary charge. Sentencing was left to the discretion of the trial court, "with a cap of executed time of twenty years." At the guilty plea hearing, pursuant to Indiana Code Section 35–35–1–2, the trial court advised Smith of his right to trial by jury, his right against self-incrimination, his right to confrontation, and the maximum and minimum possible sentences for Class C and Class D felonies.[5] After reciting the factual basis of the charges against Smith, the State continued, "further in terms of a factual basis our understanding is [Smith] will concede that this Court has venue to hear the case on the forgeries and further he will concede that the theft of the checks from the residence

of Horace Harvey is a separate criminal offense from the forgeries that were committed." These concessions were not among the terms of the written plea agreement.[6] The trial court did not question Smith regarding his understanding of waiving venue. Without mentioning Indiana Code Section 35–50–1–2(b) or (c),[7] the court asked whether Smith understood that "these are separate offenses," to which he responded, "Yes." The trial court found that Smith understood the nature of the charges against him and the possible sentences and fines that could be imposed; that he made his plea "freely and voluntarily"; and that there was a factual basis for his guilty plea.

At the sentencing hearing on March 27, 1997, Sirk orally moved [8] to withdraw his client's guilty plea, claiming that Smith had not understood the consequences of waiving venue and conceding that his crimes were separate offenses for sentencing purposes under Indiana Code Section 35–50–1–2. Smith confirmed that "had [he] known what the sentencing would have been on that [he] would have never

2. See IND. CODE § 35–43–2–1.

3. See id. § 35–43–4–2(a).

4. See id. § 35–43–5–2.

5. Although the written plea agreement mentions the trial court's authority to impose "consecutive and/or concurrent sentences pursuant to statute," the court did not orally advise Smith of this possibility.

6. Paragraph 15 of the plea agreement provides, "This agreement embodies the entire agreement between the parties, and no promises or threats have been made or inducements given the defendant by the State which are not set out herein. The defendant asks the Court to accept and enter a plea of guilty in reliance upon his/her statements made in this motion and hearing concerning such plea negotiations."

7. See id. § 35–50–1–2(b) (defining "episode of criminal conduct" as "offenses or a connect-

ed series of offenses that are closely related in time, place, and circumstance"); id. § 35–50–1–2(c) (stating that "except for crimes of violence, the total of the consecutive terms of imprisonment to which a defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted").

8. Smith does not challenge the trial court's denial of his oral motion to withdraw his guilty plea. See IND. CODE § 35–35–1–4(b) (stating that motion to withdraw guilty plea "shall be in writing and verified"); see also Marshall v. State, 590 N.E.2d 627, 631 (Ind. Ct.App.1992) (concluding that trial court properly denied defendant's "written but unverified motion" to withdraw guilty plea).

knowingly entered into this plea agreement." After listening to the tape recording of the guilty plea hearing, the trial court denied the motion, sentenced Smith to twenty years,[9] and ordered restitution in the amount of $17,210.

On April 23, 1997, Smith filed a pro se petition for post-conviction relief, asserting that his guilty plea "was made on a not voluntary basis" and that he "was not advised nor had knowledge of that by waiving venue and agreeing that each of these acts were separate acts he was waiving his right under Indiana Code 35–50–1–2 to receive a maximum sentence of ten (10) years presumptive of the next highest class of offense." On May 15, 1997, the State filed its answer, in which it asserted res judicata and promissory estoppel and "all other affirmative defenses." On June 27, 1997, the Indiana Public Defender's Office filed an appearance and notified the post-conviction court of its "present inability" to investigate Smith's petition and requested the court to defer any ruling on the petition until the public defender filed a certificate of readiness for further proceedings. The court granted the public defender's request on June 30, 1997.

On August 18, 1999, Smith by counsel filed an amendment to his petition for post-conviction relief, alleging, *inter alia*, ineffective assistance of trial counsel as evidenced by Sirk's failure to advise Smith of the sentencing ramifications of an episode of criminal conduct and the single larceny rule with respect to Smith's theft of Horace's checks. The State responded to Smith's amendment on September 29, 1999.

The post-conviction court held a hearing on Smith's amended petition on July 21, 2000. On August 18, 2000, the court denied Smith's petition and entered the following conclusions in its order:

38. That [Smith] does not cite any case or statutory authority requiring a criminal defendant be advised of the limits of Indiana Code § 35–50–1–2 in order for a plea of guilty to be voluntarily and intelligent [*sic*] made.

39. That the unauthorized control of the checks and the making and uttering of them at different bank branches at different times are not sufficiently related in time and place to constitute an "episode of criminal conduct" as defined under Indiana Code § 35–50–1–2.

. . . .

49. That records shows [*sic*] that [Smith] unreasonably delayed in presenting his Petition as there was over a two (2) year delay in from [*sic*] the sentencing hearing to the filing of the Amendment to [Smith's] Petition for Post Conviction Relief.

50. That the [State] has proven its affirmative defense of laches by a preponderance of the evidence.

### Discussion and Decision

#### Standard of Review

 Because Smith appeals from a negative judgment, we will "reverse the denial of postconviction relief only if the evidence as a whole leads unerringly and

---

9. The trial court sentenced Smith to two years on each of the theft counts, with Counts II and III to run concurrent; Counts IV and V to run concurrent but consecutive to Counts II and III; and Counts VI and VII to run concurrent but consecutive to Counts IV and V, for a total of six years. The court sentenced Smith to concurrent five-year terms for forgery on Counts VIII and IX; concurrent five-year terms for forgery on Counts X and XI, to run consecutive to Counts VIII and IX; and concurrent four-year terms for forgery on Counts XII and XIII, to run consecutive to Counts X and XI, for a total of fourteen years and an aggregate total of twenty years.

unmistakably to a decision opposite that reached by the postconviction court. In this review, findings of fact are accepted unless 'clearly erroneous,' but no deference is accorded conclusions of law." *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998) (citations omitted), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). The post-conviction court is the sole judge of evidentiary weight and witness credibility. *See id.*

### *I. Laches*

■■■ Smith contends that the post-conviction court erred in denying his petition for relief on the basis of laches. Our supreme court has defined laches as "neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done." *Williams v. State,* 716 N.E.2d 897, 901 (Ind.1999) (internal quotations omitted). Additionally, "[l]aches denotes a conscious indifference or procrastination which is wholly absent in one whose knowledge is constructive only." *Id.* (internal quotations omitted). To prevail on a claim of laches, the State bears the burden of proving by a preponderance of the evidence (1) that Smith unreasonably delayed in seeking relief and (2) that the State has been prejudiced by the delay. *See id.*

■■■ "[B]efore the petitioner's claim for relief may be denied, based on the doctrine of laches, the State must affirmatively plead the defense in its responsive pleading." *Twyman v. State,* 459 N.E.2d 705, 711 (Ind.1984); *see also* Ind. Trial Rule 8(C). The State must then prove the defense by a preponderance of the evidence. *Twyman,* 459 N.E.2d at 711. Here,

the State generally asserted "all other affirmative defenses" in its answer to Smith's original petition and neither specifically pleaded laches nor asserted prejudicial delay until it submitted its proposed findings and conclusions to the post-conviction court *after* the hearing. Moreover, Smith filed his petition for post-conviction relief only twenty-seven days after his sentencing hearing, and we refuse to penalize Smith for any delay that occurred following his contacting of the public defender's office approximately two months later. *See Edwards v. State,* 676 N.E.2d 1087, 1089–90 (Ind.Ct.App.1997), *trans. denied.* For these reasons, we conclude that the post-conviction court erred in denying Smith's petition based on laches.

### *II. Single Larceny Rule*

■■■ Next, Smith asserts that his guilty plea to six separate theft counts lacked an adequate factual basis because his purloining of the checks constituted only a single act of larceny. *See* IND.CODE § 35–35–1–3(b) ("The court shall not enter judgment upon a plea of guilty unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea."). The single larceny rule applies when "several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons." *Raines v. State,* 514 N.E.2d 298, 300 (Ind. 1987). "The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design." *Id.; see also Jenkins v. State,* 695 N.E.2d 158, 162 (Ind.Ct.App.1998) (linking single larceny rule and double jeopardy rule).[10] The

---

10. In *Jordan v. State,* 676 N.E.2d 352 (Ind.Ct. App.1997), we addressed a double jeopardy challenge to a plea agreement as follows:

Generally, a guilty plea acts as a waiver of a double jeopardy claim.

A plea of guilty and the ensuing conviction comprehend all of the factual and legal

State had discretion to charge Smith with six theft counts, but he should not have been convicted and sentenced on more than one count. *See Marshall,* 590 N.E.2d at 631 ("Although a defendant charged and found guilty may not be convicted and sentenced more than once for the same offense or for a single larceny, the State has unrestricted discretion to file alleged repetitive charges." (footnote omitted)).

■■■ Smith further claims that Sirk's failure to advise him of the single larceny rule rendered his guilty plea involuntary and unintelligent. "To decide a claim that a plea was not made voluntarily and intelligently, we will review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record." *White v. State,* 497 N.E.2d 893, 905 (Ind. 1986). Smith refers us to his testimony at the post-conviction hearing:

Q In this case you pled guilty to six separate counts of theft, is that correct?

A Yes.

Q Prior to pleading guilty, were you independently aware of the single larceny rule?

A No.

Q And again, Mr. Sirk never discussed the single larceny rule with you?

A No.

Q Did Scott Sirk ever inform you, at any point, that the charged conduct

against you legally amounted to only one theft?

A No.

Q Did anyone else inform you of this prior to your guilty plea?

A No.

Q Had you known this, would you of [*sic*] pled guilty to all six counts of theft?

A No.

. . . .

Q And finally, my last question, had you know [*sic*] this, would you of [*sic*] pled guilty under the terms of the plea bargain as a whole?

A No.

Given this testimony, it is obvious that Smith's guilty plea was at least unintelligent, if not involuntary, with respect to the six counts of theft. Before we address the question of an appropriate remedy, however, we turn our attention to the following issue.

### III. Theft and Forgeries as Episode of Criminal Conduct

■■■ Prior to his sentencing hearing and during post-conviction proceedings, Smith claimed that Sirk failed to advise him that his offenses might have constituted an episode of criminal conduct. Indiana Code Section 35–50–1–2(b) defines "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." "[E]xcept for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is

elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the an-

swer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.
*Id.* at 354 (quoting *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927) (1989). Because Smith has successfully proven that his guilty plea was unintelligent, we address his challenge on the merits.

sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." IND. CODE § 35–50–1–2(c). Assuming, *arguendo*, that Smith's offenses constituted an episode of criminal conduct, the trial court could have sentenced him to a maximum of ten years, the presumptive sentence for a Class B felony. *See id.* § 35–50–2–5.

In *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind.Ct.App.1995), a panel of this court referred to cases from other jurisdictions in construing the definition of "episode" as used by the legislature in its 1994 amendment of Indiana Code Section 35–50–1–2:

In *State v. Ferraro* (1990), 8 Haw.App. 284, 800 P.2d 623, the Hawaii Court of Appeals defined "episode" quite similarly to the definition adopted by our legislature as follows:

'the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.'

800 P.2d at 629 ( [c]itations omitted). In reaching this definition, the *Ferraro* court referred to the commentary from ABA Standard 12–2.2(a) which reads:

'Episode' means 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnapping and robbery.

*Id.* at 628 ( [e]mphasis added)[.] In *State v. Bailey* (1984), 37 Wash.App. 733, 683 P.2d 225, *review denied,* the Washington Court of Appeals also referred to the commentary from ABA Standard 12–2.2(a) in holding that " 'episode' includes only acts that occur in close proximity in time and space, ordinarily only in a connected sequence." 683 P.2d at 227.

The *Tedlock* court concluded that the defendant's fraudulent securities sales "committed against different victims at different times spanning approximately two years" did not constitute an episode of criminal conduct: "The four fraudulent sales were not connected as a complete account of each of Tedlock's four offenses can be related without referring to details of another." *Id. Cf. Mendoza v. State,* 737 N.E.2d 784, 790 (Ind.Ct.App.2000) (no episode of criminal conduct found where three marijuana sales "occurred on different dates and involved different amounts of marijuana"; first sale was initiated by confidential informant; second and third sales were initiated by defendant and did not involve confidential informant); *Logan v. State,* 693 N.E.2d 1331, 1333 (Ind.Ct.App.1998) (no episode of criminal conduct found where defendant cashed five forged checks at two different stores over five-day period; "An account of each of these offenses may be related without referring to any of the others."), *trans. denied; Trei v. State,* 658 N.E.2d 131, 133–34 (Ind.Ct.App. 1995) (episode of criminal conduct found where defendant pulled knife on teenage victim, ordered victim and friend to lie on ground, and engaged in sexual misconduct with victim); *Reynolds v. State,* 657 N.E.2d 438, 440–41 (Ind.Ct.App.1995) (no episode of criminal conduct found where defendant and companion burglarized

three separate houses on same day; "Each burglary took place as a distinct episode in itself; each can be described without referring to details of the others.").

Although a complete account of Smith's theft of the checks and each of the forgeries could arguably "be related without referring to details of the other charge[s]" under *Tedlock*, in limiting our application of the facts to the *plain language* of Indiana Code Section 35–50–1–2(b), we conclude that the "time, place, and circumstance" of this "connected series of offenses" are so closely related as to constitute an episode of criminal conduct and that the post-conviction court erred in determining otherwise. Within a matter of hours after stealing the checks, Smith deposited six of them in the same account at six branches of the same bank in the same county. Smith committed the theft and six forgeries with a single purpose in mind: to transfer funds from the account of a single victim to his account.

At the post-conviction hearing, Sirk testified that if he had discussed the episode of criminal conduct "theory" with Smith, "it wasn't done enough that [Smith] had the understanding of it" before pleading guilty. Smith testified that Sirk did not discuss this issue with him until shortly before the sentencing hearing:

Well, like I was saying, [Sirk] came back and informed me that he thought that he might of [*sic*] made a mistake. And I asked him to explain himself and he pulled out a law book and started explaining to me the single episode of criminal conduct rule and he read it through the law book and I said what exactly does that mean—what does it have to do with my case? And he informed me that if we had taken this to trial, he didn't think the burglary was gonna—he didn't think I was gonna get convicted of burglary, but he said if we

took this to trial and got convicted of everything that the way this law reads that he felt that my case would of [*sic*] fallen under single episode of criminal conduct and that the maximum I could of [*sic*] gotten, had I been convicted of the forgery and the theft, is the presumptive of the next highest felony. And I asked him to interpret that and he said well, you're [*sic*] highest felony is a C so you—the highest you can expect to get at trial would be the presumptive of a B which is ten [years]. And I said well, I just signed a plea bargain capping at twenty [years] a month before and he goes yeah, that's why we might of [*sic*] made a mistake. I said well, I don't want this plea bargain anymore. If I would of [*sic*] known that I would of [*sic*] never taken that plea bargain.

Smith repeated this assertion on cross examination:

Q At your sentencing hearing, you filed . . . or you requested to withdraw from your guilty plea, correct?

A Very good, yes.

Q Your basis for that was, as you testified in your direct examination, that there—Mr. Sirk showed you the rule about the single episode at 35–50–1–2, is that correct?

A Yes.

Q Okay. And it's your assertion that you could not be sentenced to more than ten years and that's why you wanted to get out of the guilty plea, is that correct?

A Yes.

Thus, it is clear that Smith's guilty plea was also unintelligent with respect to the sentencing ramifications of Indiana Code Section 35–50–1–2.

In *White*, our supreme court stated that

[a] petitioner who claims that his plea was involuntary and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with § 35–35–1–2 has not met his burden of proof. He needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntary or unintelligent. Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* [*v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] will require that his conviction be vacated.

497 N.E.2d at 905. Smith does not allege that the trial court failed to advise him of his so-called *Boykin* rights, but rather asserts that Sirk's and the court's failure to advise him of the single larceny rule and Indiana Code Section 35–50–1–2 rendered his guilty plea unintelligent and that he would not have entered the plea agreement had he been properly advised. *See* IND. CODE § 35–35–1–2(a)(3) (requiring court to determine that defendant "has been informed of the maximum possible sentence and minimum possible sentence for the crime charged and any possibility of the imposition of consecutive sentences").

"Defendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief." *White*, 497 N.E.2d at 905–06.[11] Given that Smith has proven that he was actually misled about his conviction and sentencing choices,[12] we now address the question of the appropriate form of relief. In *Jordan*, where the defendant pleaded guilty to robbery and felony murder, we were compelled to vacate the robbery conviction and sentence on double jeopardy grounds but were not required to vacate the plea agreement because Jordan

> ha[d] not alleged nor proven that he would not have entered the plea agreement had he been properly advised that the principles of double jeopardy precluded conviction and sentencing for both [crimes] nor [did] he allege or prove that his plea of guilty was involuntary or unintelligent.

676 N.E.2d at 355. Such is not the case here. Smith has both alleged and proven that he would not have entered the plea agreement had he been properly advised regarding his convictions and sentencing and that his guilty plea was unintelligent. Although the record may suggest that Smith might have agreed to plead guilty to one count of theft and six counts of forgery with a maximum ten-year sentence, we cannot now attempt to revise the plea agreement Smith entered unintelligently

---

**11.** *See also Disney v. State*, 441 N.E.2d 489, 492 (Ind.Ct.App.1982) ("When a guilty plea is attacked because of alleged misinformation concerning sentencing, the issue of the validity of such plea is determined by a two-part test: (1) whether the defendant was aware of actual sentencing possibilities and (2) whether the accurate information would have made any difference in his decision to enter the plea.").

**12.** We are unaware of any statutory authority permitting prosecutors and trial courts to ignore the requirements of Indiana Code Section 35–50–1–2, even where, as here, a defendant agrees to plead guilty to committing "separate" nonviolent offenses that would otherwise constitute an episode of criminal conduct for sentencing purposes. Only a misinformed or misled defendant would voluntarily enter such a plea agreement in the first place.

so that it resembles a plea agreement he might have entered intelligently had he been properly advised in the first instance. We therefore vacate Smith's convictions and sentences entered pursuant to the plea agreement. Smith may be reprosecuted on the original charges.

Reversed.

BARNES, J., concurs as to issues I and III and dissents as to issue II with separate opinion.

BAKER, J., concurs as to issues I and II and dissents as to issue III with separate opinion.

BARNES, Judge, dissenting as to issue II

I agree with the majority concerning the post-conviction court's erroneous resolution of the laches issue. I also agree with Judge Brook that before one signs a plea agreement, all aspects of the consequences of that decision must be fully explained to and understood by a defendant. Here, it is apparent Smith was unaware of the "episode of criminal conduct" rule and its *possible* application to his case when he entered into the plea agreement.

However, I do not agree that this factual scenario *necessarily* falls within the ambit of Indiana Code Section 35–50–1–2(b) and (c). The majority admits that a complete account of the separate forgeries and deposits into the same account could "arguably" be related without referring to the details of the other charges. That does not, in my opinion, satisfy the mandate of the "episode of criminal conduct" statute nor *Tedlock v. State* and the other cases cited by the majority, which I believe stated the correct rule: that multiple crimes do not constitute an "episode of criminal conduct" if a complete account of each offense can be related without referring to details of another. *Tedlock*, 656 N.E.2d at 276. It is my opinion that an episode of

criminal conduct must be just that events so connected in time, space, and sequence that there can be no mistake or ambiguity about the application of Indiana Code Section 35–50–1–2(b) and (c).

BAKER, Judge, dissenting as to issue III

I fully concur with the majority's resolution of the laches issue and Judge Brook's conclusion that the time, place, and circumstance of this connected series of offenses are so closely related as to constitute one "episode" of criminal conduct. *See* op. at 903. As Judge Brook acknowledges, Smith's deposit of six of the checks in the same account at six branches of the same bank in the same county within a matter of hours after the theft supports such a determination.

I cannot agree with the majority, however, that Smith has sufficiently demonstrated a showing of prejudice that commands the conclusion that his guilty plea was involuntary. A petitioner who claims that his plea was involuntary and unintelligent, but can only establish that the trial judge failed to give an advisement in accordance with IND.CODE § 35–35–1–2, has not met his burden of proof. *White v. State*, 497 N.E.2d 893, 905 (Ind.1986). He must plead specific facts from which a factfinder could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with I.C. § 35–35–1–2 rendered his decision involuntary or unintelligent. *Id.*

The record here reflects that the trial court provided Smith with all the advisements enumerated in I.C. § 35–35–1–2 before accepting the guilty plea. To the extent that any relevant sentencing considerations were not fully explained to Smith by his counsel, there is no evidence, except his own protestations, supporting the contention that it affected his decision to plead guilty. Smith admitted at the post-

conviction hearing that he "wanted to get out of the guilty plea" because he should not have received a sentence greater than ten years. Op. at 903. Smith's argument, that his defense counsel's purported failure to advise him of the maximum potential sentence renders his plea "unknowing" and "involuntary," is misplaced and, in my view, Smith has failed to show that he did not enter into the guilty plea knowingly or voluntarily.

I also cannot agree with the majority's determination that Smith should be reprosecuted on the original charges. Op. at 905. Rather, inasmuch as the maximum sentence that the trial court could have imposed upon Smith in this circumstance was ten years pursuant to IND.CODE § 35–50–2–5 and I.C. § 35–50–1–2, I would reverse and remand this cause to the trial court with instructions to correct the sentence. Specifically, it appears to me that the convictions and sentences as ordered on forgery counts numbered VIII through XI could stand, and the sentences imposed with respect to the theft counts and the remaining two forgery counts could be vacated. Thus, the ten-year limitation upon sentencing in this circumstance would be achieved.

Finally, I note that while there may be circumstances when a correction of an erroneous sentence would defeat the specific terms of a plea bargain, such is not the case here. There was no agreement as to the exact number of years that Smith would receive. Rather, Smith agreed to plead guilty to a series of offenses that could only result in a maximum penalty of ten years. Only in those instances where our correction of the sentence would prejudice the State should the entire plea be vacated.