Matthew D. PIPER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–0111–PC–00430.

Court of Appeals of Indiana.

June 27, 2002.

Dennis M. Stark, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana; Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Matthew D. Piper appeals from the trial court's revocation of his probation and sentence to seven and one-half years executed time. We affirm.

### Issue

Piper presents one issue for our review, namely whether the trial court denied his procedural due process rights during his probation revocation proceeding.

### Facts and Procedural History

On June 10, 1991, Piper was convicted of confinement, a Class B felony, and burglary, a Class A felony. The trial court sentenced him to twenty years for confinement and thirty years for burglary, said sentences to be executed concurrently; the trial court then suspended seven and one-half years of that sentence. The trial court later modified his sentence, and Piper was released to probation on September 2, 1999.

During his probation, Piper was convicted of criminal confinement, a Class D felony. Piper was also charged with and convicted of being a habitual offender during the confinement trial. The State filed a petition to revoke Piper's probation on June 26, 2000, based upon the confinement offense. After a probation revocation hearing on August 30, 2001, the trial court issued an order on September 5, 2001, revoking Piper's probation and sentencing him to seven and one-half years executed time; that sentence was to be executed consecutive to his sentence for the new confinement and habitual offender convic-

tions. After the trial court denied his Motion to Correct Errors, Piper brought this appeal.

### I. Standard of Review

*Discussion and Decision*

■ Our standard of review of an appeal from the revocation of probation is well settled. We consider only the evidence most favorable to the judgment and we will not reweigh the evidence or judge the credibility of witnesses. We will affirm the trial court's decision to revoke probation if there is substantial evidence of probative value to support the conclusion that the defendant violated any terms of probation. *Grubb v. State,* 734 N.E.2d 589, 591 (Ind.Ct.App.2000), *trans. denied.*

### II. Procedural Due Process

Piper alleges his procedural due process rights under the Fourteenth Amendment to the United States Constitution were violated during the revocation proceedings. Specifically, he alleges he was denied the right to obtain discovery from the State, the right to present witnesses and documentary evidence, the right to written notice of the violation, and the right to have access to legal resources. Piper alleges these violations rise to the level of fundamental error in an effort to avoid any argument from the State of waiver of these claims on appeal. While not engaging in fundamental error analysis here, we do choose to address the merits of the alleged violations.

■ The grant of probation or conditional release is a favor granted by the State, not a right to which a criminal defendant is entitled; however, once the State grants that favor, it cannot simply revoke the privilege at its discretion. *Par-*

*ker v. State,* 676 N.E.2d 1083, 1085 (Ind.Ct. App.1997). Probation revocation implicates the defendant's liberty interests which entitles him to some procedural due process. *Id.* Because probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding. *Id.*

■ The minimum requirements of due process include: (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation. *Id.*

### A. Right to Obtain Discovery

■ We first consider Piper's claimed violation of his right to obtain discovery. Piper alleges he filed three discovery-related pleadings upon which the trial court did not rule: a request for a chronological case summary directed to the court clerk, a motion to compel discovery from the State, and a motion for a court order to produce records from the county probation department.[1] Piper argues his confinement and transport from one jail to another during the time before the hearing prevented him from conducting discovery pursuant to the method outlined in the Indiana Trial Rules, and therefore the only option he had was to request a court

---

**1.** Piper concedes the court clerk of its own accord delivered to him a copy of the chrono- logical case summary.

order requiring the State to send him discovery.

■ Piper waived his right to counsel to represent him in the revocation proceedings; he does not raise an issue regarding the voluntariness of his waiver on appeal. A defendant who proceeds pro se accepts the burdens and hazards incident to his position. *Boykin v. State*, 702 N.E.2d 1105, 1107 (Ind.Ct.App.1998). Moreover, a defendant who represents himself will be held to the rules of trial procedure, will be treated like an attorney, and will be responsible for making objections and following procedural and evidentiary rules. *Redington v. State*, 678 N.E.2d 114, 118 (Ind.Ct.App.1997), *trans. denied.* The Indiana Trial Rules require service upon the party from whom one seeks discovery and informal attempts to resolve discovery disputes prior to a request for trial court intervention. Ind. Trial Rules 26–37. We are not persuaded by his argument that he "had no means to pursue informal discovery and was left with only formal discovery," Appellant's Brief at 10, as that argument does not explain for us why he was able to file motions requesting discovery and to serve the county prosecutor with those pleadings but was unable to follow the discovery procedures described in the Trial Rules. Accordingly, we hold that his rights were not prejudiced by the trial court's failure to rule on his discovery motions.

## B. Right to Present Witnesses and Evidence

■ Next, Piper argues his incarceration prevented him from calling witnesses and presenting evidence on his behalf. He argues he received inadequate notice of his final evidentiary hearing on August 30, 2001, because he received notice of the hearing on August 23, 2001. He urges that he relied upon the trial court's word at the initial hearing on August 14, 2001, that the final hearing would be set "a month or two" after the initial hearing date, and that on August 23, 2001, the day he received notice of the hearing date, he was transferred to the Reception and Diagnostic Center (RDC) where he had no access to legal resources or means to contact witnesses.

While we agree that Piper had the right to present witnesses and documentary evidence at his revocation hearing, we are unpersuaded by his argument that he was unable to prepare for hearing due to his temporary placement at RDC. The State filed its initial petition to revoke Piper's probation on June 26, 2000, over a year prior to the final hearing. Indeed, Piper was serving a portion of his sentence for the offense he committed while on probation during the year between filing the petition to revoke and the initial hearing. Although Piper testified he had no actual notice of the State's filing until August 14, 2001, the date of the initial hearing, our standard of review does not require us to consider this evidence. The warrant for Piper's arrest was served July 10, 2001, and the chronological case summary shows attorney Ronald Chapman filed an appearance for Piper on July 11, 2001, given these facts, Piper had sufficient notice to enable him to prepare for an evidentiary hearing on August 30, 2001, and his rights were not prejudiced by the trial court's statements regarding the final hearing date.

## C. Right to Written Notice of the Violation

■ Piper's third claim is that he was denied written notice of the alleged violation because the State's initial petition to revoke probation listed the offense Piper committed while on probation as criminal confinement, a Class B felony, when in actuality Piper was convicted of confine-

ment as a Class D felony.[2] The trial court granted the State's oral motion to amend its pleading to reflect the proper conviction at the beginning of the evidentiary hearing on August 30, 2001. Piper argues this prejudiced him because he had prepared his defense around the theory that the State had filed a petition to revoke his probation that was clearly in error; when the trial court granted the State's oral motion to amend, he had no time to change his theory of defense. The trial court denied Piper's motion to continue the evidentiary hearing after the State was allowed to amend its petition.

We are not persuaded by Piper's argument that he was prejudiced because the trial court unfairly allowed the State a "major change in tactics." The State's amendment was equivalent to an amendment of a typographical error and thus without adverse effect on Piper. Under either the original petition or the amended petition, Piper was required to defend against the allegation that he was convicted of the offense of criminal confinement while on probation; moreover, either conviction, whether a Class B or Class D felony, would constitute a violation of the terms of his probation. The trial court did not abuse its discretion in allowing this amendment.

### D. Right to Access to the Courts

 Finally, Piper argues he requested access to certain legal materials, and the trial court denied him that access because he did not receive the materials. Specifically, Piper requested access to Indiana Code Titles 11, 34, and 35; Northeastern Reporters; the Indiana Trial and Appellate Rules; and a copy of two United States Supreme Court cases. Piper requested these materials in correspondence to jail staff, and he sent a copy of his request to the trial court, as well. Piper argues he would have used the requested materials to research issues including the following:

1. What quantum of proof is necessary for the court to find that he violated his probation;

2. Must the trial court impose the full, suspended term of imprisonment if Mr. Piper were found to have violated the terms of his probation; and

3. What factors should the trial court consider in imposing any lesser sentence.

Appellant's Reply Brief at 3. In essence, Piper suggests that had he had access to the materials he requested while incarcerated, the possibility exists that he might have prepared a stronger defense or argued successfully for a lighter sentence.

Piper invokes his fundamental constitutional right of access to the courts in support of his argument that he was entitled to these materials; the right to which he refers requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with law libraries or adequate assistance from persons trained in the law. *See Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), *quoting Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, prison law libraries exist to allow prisoners to help themselves so that they are not deprived of access to the courts while they are incarcerated. Piper was not denied access to the courts during the revocation proceedings because the trial court offered him the services of an attorney, and he declined that offer in favor of rep-

---

2. Piper was initially charged with criminal confinement as a Class B felony, but the jury convicted him of the lesser offense of confinement as a Class D felony.

resenting himself.[3] As we previously noted, a defendant in a probation revocation proceeding is not entitled to the full due process rights afforded a defendant in a criminal proceeding, *Parker*, 676 N.E.2d at 1085, and a defendant who proceeds pro se accepts the burdens and hazards incident to his position, *Boykin*, 702 N.E.2d at 1107.

We agree with the State that Piper waived the issue of access to legal materials because he waived his right to appointed counsel at the initial hearing on August 14, 2001. We are persuaded by the holdings of the Court of Appeals for the Seventh Circuit in similar cases. "This court has consistently held that when a defendant (pretrial detainee) is offered the assistance of appointed counsel and refuses the same, no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he refuse the services of court-appointed counsel." *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir.2000), citing *United States v. Chapman*, 954 F.2d 1352, 1362 (7th Cir.1992).

Piper argues *Byrd* and *Chapman* are inapplicable here because in each of those cases the defendant was appointed stand-by counsel and thus retained some access to legal resources, while he did not. We find this distinction to be immaterial. The minimum due process rights articulated in *Parker* do not require appointment of stand-by counsel to a pro se defendant in a revocation proceeding. Furthermore, Piper has not raised an issue for our review regarding the voluntariness of his waiver of his right to counsel; thus, we presume he was sufficiently warned of the perils of self-representation in a revocation pro-

ceeding. Because we adopt the position of the *Byrd* court, and because Piper was not entitled to the full due process rights of a defendant in a criminal proceeding, we hold Piper's rights were not violated due to any inability Piper might have had to access legal research materials during the revocation proceedings.

*Conclusion*

The trial court did not violate Piper's due process rights during the probation revocation proceedings.

Affirmed.

BAILEY and NAJAM, JJ., concur.

---

**3.** The record indicates Piper was represented by counsel during a portion of the proceedings, but counsel withdrew prior to the initial hearing on August 14, 2001. When the trial judge asked Piper during the initial hearing whether he wished to have counsel appointed to represent him, Piper waived that right. Appellant's Appendix at 56.