## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 28 2015, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark A. Bates
Office of the Lake County Public Defender
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Edward Stewart, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff* | May 28, 2015 Court of Appeals Case No. 45A04-1409-CR-422 Appeal from the Lake Superior Court The Honorable Clarence D. Murray, Judge Case No. 45G02-0908-FB-93 |

**Crone, Judge.**

## Case Summary

[1]     Anthony Edward Stewart appeals an order revoking his probation. He asserts that the trial court abused its discretion in admitting police testimony

containing hearsay statements and identification evidence by an eyewitness and in admitting recordings of phone calls that he placed from the jail. Finding that the recorded phone calls were properly admitted, we conclude that any possible error in admitting the hearsay statements and identification evidence was harmless. Thus, we affirm.

## Facts and Procedural History

In January 2013, Stewart was convicted via plea agreement of class B felony unlawful possession of a firearm by a serious violent felon. The trial court sentenced him to ten years, with four years suspended to probation. The conditions of his probation included a prohibition against possessing a firearm and a prohibition against committing a new criminal offense.

On February 1, 2014, gunshots were fired at a vehicle carrying three people. One of the occupants, Brian Boyd, was seriously injured and hospitalized. In the course of his investigation, East Chicago Police Department Detective Isaac Washington interviewed Dwayne Millender, a passenger in the vehicle at the time of the shooting. During his time on the force, Detective Washington had repeatedly been in contact with both Millender and Stewart, and he knew that "Ant" was Stewart's nickname and "Lakeside" was Millender's nickname. Tr. at 12 and 13. Millender told the detective that "Ant" was the shooter. *Id.* He subsequently identified Stewart as the shooter from a photo array. On February 1, 2014, the State charged Stewart with attempted murder, aggravated battery,

attempted battery by means of a deadly weapon, battery resulting in serious bodily injury to an endangered adult, and a habitual offender count.

[4] On February 28, 2014, during the pendency of the attempted murder proceedings, the State filed a petition to revoke Stewart's probation, alleging that he violated his probation conditions by possessing a firearm and committing a new criminal offense. While he was in the Lake County jail pending trial, he made several phone calls, which were recorded. At least three of the calls were made to Millender. During these calls, Stewart informed Millender that he would be receiving subpoenas and admonished Millender not to show up for deposition or court proceedings. Millender agreed not to testify against Stewart. During one of the calls, Stewart told Millender that he did not intend for the shots to hit Millender but that they were meant to hit a person named Buddy. In another recorded call, Stewart told an unidentified person that he did not want Millender to surprise him by showing up in court.

[5] After several continuances, the revocation hearing was held on July 3, 2014. Detective Washington testified concerning the State's efforts to serve a subpoena on Millender by driving the area two days before the hearing.[1] He described his familiarity with both Stewart and Millender, having coached Stewart in basketball and spoken with him approximately fifty times and having spoken with Millender approximately 100 times. Over Stewart's hearsay

---

[1] Although the record is unclear, the subpoena apparently was for Stewart's upcoming attempted murder trial rather than his probation revocation hearing.

objections, the trial court admitted the detective's testimony concerning Millender's statements identifying Stewart as the shooter both verbally and by photograph.

[6] Also over Stewart's objection, the trial court admitted four recorded phone calls from the jail, with Detective Washington authenticating the voices and nicknames of Stewart and Millender. The trial court found that the State had proven by a preponderance of the evidence that Stewart violated the terms of his probation. The court therefore issued an order revoking Stewart's probation. Stewart now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[7] Stewart maintains that the trial court abused its discretion in revoking his probation. Probation is a matter of grace left to the trial court's sound discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the probationer violates those conditions. *Id*. We review a trial court's probation violation determination using an abuse of discretion standard. *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App. 2014). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor

judge witness credibility. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012). Instead, we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* Because a probation revocation proceeding is civil in nature, the State need only prove the alleged probation violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010). Proof of a single violation is sufficient to permit a trial court to revoke probation. *Beeler v. State*, 959 N.E.2d 828, 830 (Ind. Ct. App. 2011), *trans. denied*.

[8] Here, the revocation petition alleged that Stewart "engage[d] in criminal activity as indicated by his arrest" for attempted murder, aggravated battery, attempted battery by means of a deadly weapon, and battery resulting in serious bodily injury to an endangered adult, all in conjunction with a February 1, 2014 shooting incident. Appellant's App. at 40. At the time of the hearing, he was awaiting trial on those charges.[2]

> When a probationer is accused of committing a criminal offense, an arrest alone does not warrant the revocation of probation. Likewise, the mere filing of a criminal charge against a defendant does not warrant the revocation of probation. Instead, when the State alleges that the defendant violated probation by committing a new criminal offense, the State is required to prove—by a preponderance of the

---

[2] The evidence below and the arguments on appeal focus on Stewart's alleged commission of a new criminal offense. In granting the petition, the trial court referenced the "violations" in the plural, finding that they were established by a preponderance of the evidence. Tr. at 44. The court made one brief reference to the "bullets or shots," but otherwise appeared to roll the firearm possession violation into the evidence supporting Stewart's commission of the new offense. *Id.* at 43. Because the new offense violation involved the use of a firearm, we will address the firearm possession as it relates to that analysis.

evidence—that the defendant committed the offense.

*Jackson*, 6 N.E.3d at 1042 (citations and quotation marks omitted). In the context of probation revocation, the State need not establish that the defendant was actually *convicted* of the new offense. *Lightcap v. State*, 863 N.E.2d 907, 911 (Ind. Ct. App. 2007).

[9] Stewart contends that he was denied his constitutional right of confrontation and due process when the trial court admitted certain evidence. In the context of probation revocation, the defendant's liberty interest is conditional, and he is therefore not entitled to the full panoply of due process rights afforded a defendant in a criminal proceeding. *Piper v. State*, 770 N.E.2d 880, 882 (Ind. Ct. App. 2002), *trans. denied*. However, because probation revocation implicates his conditional liberty interest, he is entitled to some procedural due process, including:

> (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation.

*Id*.

[10] In *Reyes v. State*, 868 N.E.2d 438, 441 (Ind. 2007), our supreme court adopted a "substantial trustworthiness" test for determining the admissibility of evidence during probation revocation proceedings. This means that in such hearings, the

trial court may consider "any relevant evidence bearing some substantial indicia of reliability," including "reliable hearsay." *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). In other words, concerning hearsay, a showing of substantial trustworthiness is an implicit finding of good cause, therefore obviating the need to otherwise show good cause for not producing the declarant live. *Reyes*, 868 N.E.2d at 442.

[11] Stewart challenges the trial court's admission of four recorded phone calls that he made from the jail and Detective Washington's testimony concerning those calls. To the extent that he predicates this claim on what he characterizes as a discovery violation by the State in failing to timely notify him of the recordings, we note that

> [t]he trial court has broad discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice. Generally, the proper remedy for a discovery violation is a continuance. Exclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial.

*Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999) (citations omitted).

[12] Indiana Trial Rule 26, governing discovery, does not provide for mandatory disclosures. Although the State has a constitutional duty to disclose evidence favorable to the defendant, "there is no affirmative duty to provide inculpatory evidence." *Booker v. State*, 903 N.E.2d 502, 504-05 (Ind. Ct. App. 2009), *trans. denied*.

During direct examination, the State questioned Detective Washington concerning the voices on four recorded phone calls placed from the jail. The following colloquy ensued:

> [DEFENSE COUNSEL]: Judge, at this juncture, I have to object. I was never given an opportunity to review these phone calls. I'm just hearing about this for the first time this morning. So I would like to show my objection to any testimony relating to anything that was not provided in discovery.
>
> THE COURT: Was there a discovery order in the Petition to Revoke Probation?
>
> [DEFENSE COUNSEL]: Judge, I thought that was a standard course of the matter, Judge. I presumed that that was supposed to be turned over as a matter of course.
>
> THE COURT: It wasn't. Obviously we understand your objection concerning short cause FA-7 [attempted murder]. And so your objection—you are objecting to this being presented to the Court at this time?
>
> [DEFENSE COUNSEL]: Right, Judge.
>
> THE COURT: Would you like an opportunity to hear the recordings before we reconvene. We could recess for a while to give you that opportunity.
>
> [DEFENSE COUNSEL]: Judge, obviously I would like that opportunity. However, I think my objection still stands, that it puts me in a distinct disadvantage having meaningful cross-examination based upon that at this late notice.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: While I would be glad to take that opportunity, Judge, I don't think that cures my objection because I do not feel that I would have proper time to adequately cross examine this

witness or challenge those, ask that they not be admitted.

THE COURT: Okay. The record will show that this evidentiary hearing was scheduled on June the 6th, and there was an opportunity from that date to now, it's been almost a month, to request any information from the State. And so your objection to prohibit the presentation of the evidence is denied. And, State, you may proceed.

[STATE]: Your Honor, may I address an issue that was stated for the record?

THE COURT: If you would like to, yes.

[STATE]: The State did notify [defense counsel] that I stated I am listening to some recordings. I can't make out what they said. I will have them. I was notified over the weekend of this specific language in the dialogue. And I did call—we've been texting back and forth letting [defense counsel] know, what the gist of what some of the conversations are. This morning, I called and stated, I am here. I'm trying to download these. He was busy. So part—it is true, I did not turn them over; however, he had notice prior to right this moment.

THE COURT: All right.

[DEFENSE COUNSEL]: Judge, I would acknowledge that as well. But I did not know what they said to even factor it, so that's what my objection was.

THE COURT: All right. Thank you very much, everyone. Let's go forward.

Tr. at 15-17.

[14] First, the record indicates that Stewart never requested discovery from the State in the probation revocation proceedings. Instead, he treated discovery as mandatory as a matter of course. The trial court indicated, in ruling on the recordings, that Stewart had never requested discovery despite having had a

month since the most recently granted continuance to do so. The State notes that even in a criminal trial setting, as opposed to the more flexible probation revocation setting, the constitutional duty to disclose applies only to exculpatory evidence. *Booker*, 903 N.E.2d at 504-05. The recordings clearly implicate Stewart as the shooter and highlight his attempts to dissuade Millender from testifying.

[15] Moreover, Stewart never specifically requested a continuance. Rather, defense counsel reiterated that his objection was to the *admission* of the recordings and testimony pertaining to them. When the trial court offered defense counsel a recess to listen to the recordings, his responses were equivocal: "I would like that opportunity. However …." And, "While I would be glad to take that opportunity …. I don't think that cures my objection … [I] ask that they not be admitted." Tr. at 15-16. If he had wanted a continuance, that would have been the perfect time to request it; yet he did not. As a result, he has waived the issue for consideration on appeal. *See Lindsey v. State*, 877 N.E.2d 190, 196 (Ind. Ct. App. 2007) (failure to request continuance where continuance is the appropriate remedy constitutes waiver), *trans. denied* (2008).

[16] Finally, despite Stewart's assertion of being unaware of the recordings until the hearing, the prosecutor emphasized that she had notified defense counsel over the weekend concerning the contents of the recordings and that the two had texted back and forth about the gist of the conversations. The State also noted that it had offered defense counsel an opportunity to listen to the recordings that morning before the hearing. Defense counsel admitted as such, but reiterated

his objection to their admission. In short, Stewart did not avail himself of the procedures available to cure any infirmities in the discovery process. Instead, he sought the extreme remedy of exclusion yet failed to show that the State deliberately withheld the recordings from him.

[17] Notwithstanding Stewart's procedural failures, the recordings contained inculpatory, not exculpatory, evidence. Detective Washington's testimony was crucial in laying a foundation for the recordings, as he was able to authenticate the voices of both Millender and Stewart. *See*, *e.g.*, Tr. at 19 ("Q. So you know [Stewart's] voice and can identify it? A. I know it, yes."). The detective testified that he had spoken to Millender over 100 times and that he had coached Stewart in basketball and had spoken to him approximately fifty times. As each recording was played, the detective identified the voices. He identified the first three recordings as conversations between Stewart, a/k/a "Ant," and Millender, a/k/a "Lakeside." *Id*. at 21-22. The recordings contained instructions from Stewart to Millender, with Stewart informing Millender that he would be receiving papers ordering him to come in for a deposition or for testimony in court and advising him to ignore the papers and not show up. The recordings also indicated Millender's agreement not to testify against Stewart. In one of the recordings, Stewart told Millender that the bullets were not intended for him but were intended for another person in the vehicle. The fourth recording was a conversation between Stewart and an unrecognized individual wherein Stewart advised his listener that he did not want Millender showing up and surprising him by coming to court.

[18] The recordings, taken through the jail phone system, were subjected to voice authentication by Detective Washington, who was extensively familiar with both Stewart and Millender. We conclude that the recordings bore substantial indicia of reliability. In these recorded conversations, Stewart incriminated himself as to the violations of his probation conditions by admitting that he (1) committed a new criminal offense and (2) used a firearm.[3]

[19] In sum, the trial court did not abuse its discretion in admitting the recordings. As for Millender's hearsay statements and photo array identification of Stewart as the shooter, any possible error in their admission was harmless as cumulative of the contents of those recordings. The State met its burden of establishing Stewart's probation violations by a preponderance of the evidence. As such, the trial court acted within its discretion in revoking his probation. Accordingly, we affirm.

[20] Affirmed.

Brown, J., and Pyle, J., concur.

---

[3] Because we find the recordings substantially trustworthy, we need not address Millender's availability. We note, however, that the recordings implicate Stewart's role in procuring Millender's unavailability by means of intimidation. Indiana Rule of Evidence 804(b)(5) permits admission of hearsay "offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying." Essentially, Stewart invited the very circumstance about which he now complains: hearsay evidence admitted in the absence of the declarant. Having played this role in procuring Millender's unavailability, he is subject to the "forfeiture by wrongdoing" hearsay exception found in Rule 804(b)(5). *White v. State*, 978 N.E.2d 475, 479 (Ind. Ct. App. 2012), *trans. denied* (2013).